UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NADEW A. WELDEMARIAM,

Plaintiff,

v.                                              Case No. 20-2301-JWB

BRANCH BANKING AND TRUST CO.

Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant's motion to dismiss. (Doc. 8.)  This motion is fully briefed and is ripe for decision. (Docs. 9, 12, 16.)  For the reasons stated herein, Defendant's motion is DENIED.

**I.      Factual Background**

This action was initially brought by Plaintiff, Nadew A. Weldemariam ("Weldemariam"), against Defendant Branch Banking and Trust Co. ("Bank") in state court.  The Bank removed the action to this court pursuant to 28 U.S.C. § 1332(a)(1).  (Doc. 1.)  Weldemariam's amended petition contains four claims against the Bank: (1) malicious prosecution, (2) gross negligence, (3) intentional infliction of emotional distress, (4) and defamation (libel and slander).

The Bank moves under Fed. R. Civ. P. 12(b)(6) to dismiss all claims.  (Doc. 8.)  Usually, a court only considers the facts alleged in the complaint. *See Dobson v. Anderson*, 319 F. App'x 698, 701 (10th Cir. 2008).  In deciding a Rule 12(b)(6) motion, the court may also consider documents attached to the complaint.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  Weldemariam attached the state court's journal entry of judgment to his state court amended petition.  (*See* Doc. 1, Exh. B) ("Am. Pet.")  Both parties reference the judgment in their

briefing and do not challenge its authenticity.  Therefore, it will be considered here.  *See Smith,* 561 F.3d at 1098.

The Bank holds a home mortgage on Weldemariam's residence located at 2916 Eaton Street, Kansas City, Kansas 66103. (Am. Pet. at 2.)  At some point before June 27, 2014, Weldemariam became delinquent in his loan payments to the Bank.  (*Id.*)  On June 27, 2014, Weldemariam sent the Bank a cashier's check in the amount of $1,366.00 and some other additional funds to bring his loan account current and satisfy the payment due in August 2014. (*Id.*)  On July 11, 2014, the Bank sent Weldemariam a letter stating his loan was current with an excess payment.  (*Id.*)

On August 4, 2014, the Bank "reversed the entry of the cashier check payment," and the account was, again, delinquent.  (*Id.*)  Weldemariam alleges that the Bank never explained why the entry of the cashier's check was reversed.  (*Id.*)  Furthermore, Weldemariam alleges that his bank statements from the bank that issued the cashier's check reflected the payment of the funds and the issuing bank had not informed him that payment was not made.  (*Id.* at 3.)  Then, on August 25, 2014, the Bank sent a letter to Weldemariam informing him his loan was in default, and the default must be cured within 30 days or the Bank would begin foreclosure proceedings.  (*Id.*) Afterward, from September 2014 to December 2016, Weldemariam sent his regular mortgage payment every month, but the Bank returned each payment.  (*Id.*)

The Bank filed a foreclosure action on Weldemariam's residence on October 12, 2014. (*Id.*)  The action, *Branch Banking & Trust Co. v. Nadew A. Weldemariam*, Case No. 2014-CV-001016, was tried in the District Court of Wyandotte County, Kansas, in October of 2018.  (*Id.* at Exh. A at 2.)  The Wyandotte County Court found that the bank never gave reason for the reversal of the cashier's check payment.  (*Id.* at 3.)  The state court also found that Weldemariam was in

"substantial" compliance with his loan and "that no explanation was given for why he was not in compliance. . . ."  (*Id.*)  Notably, the state court held that Weldemariam "was not in breach of the agreement" at the time the action was filed.  (*Id.*)  Finally, the court denied the Bank's petition for foreclosure.  (*Id.* at 5.)

As a result of the foregoing action, Weldemariam filed this action against the Bank. Weldemariam alleges that he suffered mental stress and aguish that manifested as physical illness as a result of the Bank's actions.  (Am. Pet. at 4.)  Weldemariam seeks damages for the mental stress and aguish.  He has also requested $25,000 for the cost of defending the litigation and punitive damages to deter the Bank from similar future conduct.  *Id.*  Weldemariam seeks total damages in excess of $75,000.  (*Id.* at 7.)

## II.   Motion to Dismiss Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a complaint must have adequate allegations of fact when taken as true to state a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).   Those factual allegations must be more than speculative; they must be plausible on their face.  *Id.* Well-pleaded facts will be viewed most favorably to the nonmoving party. *Archuleta v. Wagner*, 523 F. 3d 1278, 1283 (10th Cir. 2008).

## III.   Discussion

The Bank moves for dismissal of all counts in the amended complaint on the basis that they are barred by the doctrine of res judicata.  The Bank further argues that Weldemariam has failed to allege facts that plausibly state a claim under Kansas law.

### A.  Gross Negligence, Intentional Infliction of Emotional Distress and Libel

The Bank argues that the claims of gross negligence, intentional infliction of emotional distress, and libel are barred under the doctrine of res judicata. (Doc. 9 at 5–10.) In his response, Weldemariam moved to voluntarily dismiss these claims without prejudice pursuant to Rule 41(a)(2). (Doc. 12 at 1–2.)

Rule 41 allows dismissal of an action, not claims. *Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996). Instead of attempting to voluntarily dismiss these claims in his response, Weldemariam should have filed an amended complaint. (Doc. 16 at 1.) The Bank, however, does not object to Weldemariam's voluntary dismissal of the claims. Therefore, Weldemariam is instructed to file an amended complaint within ten days of this order omitting these claims.

### B. **Malicious Prosecution**

Turning to the remaining claim, the Bank moves for dismissal of the malicious prosecution claim on the basis that it is barred by res judicata and fails to state a claim. With respect to the Bank's argument that the malicious prosecution claim is barred by the doctrine of res judicata, this argument was raised for the first time in the Bank's reply brief. (Doc. 16 at 7.) The Bank did not argue this in its initial brief. (*See* Doc. 9 at 5.) The court does not consider arguments raised for the first time in the reply brief. *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (quotations and citation omitted); *see also Clark v. City of Shawnee, Kansas*, No. 15-4965-SAC, 2017 WL 698499, at *1 (D. Kan. Feb. 22, 2017) (applying *Reedy* to district courts).[1]

---

[1] Moreover, the case the Bank relies on (*see* Doc. 16 at 7) in support of this argument is distinguishable. In *Schwartz v. Coastal Physician Grp., Inc.*, 172 F.3d 63, 1999 WL 89037 at *4 (10th Cir. 1999), the court of appeals found that the claim of malicious prosecution was barred by the doctrine of res judicata because the plaintiff had filed a counterclaim in the first action seeking damages for "defendant's initiation of an unjustified lawsuit" and therefore should have also raised a malicious prosecution claim. Based on a review of the judgment in the state court action, it does not appear that Weldemariam brought a counterclaim alleging improper conduct in the foreclosure action.

Turning to the Bank's argument that the claim fails on the merits, to state a claim of malicious prosecution, a plaintiff must allege facts that plausibly support the following elements:

1)     that the defendant initiated, continued, or procured civil procedures against the plaintiff;

2)     that the defendant did so without probable cause;

3)     that the defendant acted with malice, that is he acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based;

4)     that the proceeding terminated in favor of the plaintiff; and

5)     that the plaintiff sustained damages.

*In re Landrith*, 280 Kan. 619, 647, 124 P.3d 467, 484-85 (2005) (citing *Bergstrom v. Noah*, 266 Kan. 829, 974 P.2d 520 (1999)). The Bank contends that Weldemariam failed to allege sufficiently plausible facts to demonstrate that the Bank initiated a civil action without probable cause, that the Bank acted with malice, and that he sustained damages. The remaining two elements are not in dispute at this stage.

     1.    <u>Probable cause</u>. Based on a review of the allegations and Kansas law, the court finds that Weldemariam has sufficiently stated plausible facts to support a claim that the Bank acted without probable cause when it initiated foreclosure proceedings.

An action for malicious prosecution requires the plaintiff to prove the element that the defendant initiated or continued foreclosure proceedings without probable cause. *In re Landrith*, 124 P.3d at 484. Probable cause "exists when there is a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent [person] in the belief that the party committed the act of which he is complaining." *Nelson v. Miller*, 227 Kan. 271, 277, 607 P.2d 438, 443-44 (1980). The inquiry is restricted to the facts and circumstances as they seemed to the defendant at the action's commencement. *Id.* at 444. When the facts that

establish the existence or absence of probable cause are in dispute, it becomes an issue to be submitted to a jury. *Id.*

The Bank argues that the record affirmatively establishes probable cause. (Doc. 9 at 11.) It contends that Mr. Weldemariam's prior default coupled with the Bank's record showing him in default gave it probable cause to proceed with the foreclosure. *Id.* Weldemariam alleges that the prior default had been cured with his cashier's check payment. (Am. Pet. at 2.) Weldemariam implies that the Bank's records regarding the reversal of the payment were in error and alleges that the Bank cannot explain why the payment was not credited to his account. (*Id.*; Exh. A ¶ 9.) However, the Bank claims that *Carnegie v. Gage Furniture, Inc.*, is analogous to this matter and should be controlling. (Doc. 9 at 12.)

In Kansas, if an action is brought by a plaintiff acting as a *reasonably cautious person* under all the circumstances, probable cause exists as a matter of law. *Carnegie v. Gage Furniture, Inc.*, 217 Kan. 564, 572, 538 P.2d 659, 665 (Kan. 1975). In *Carnegie*, the Kansas Supreme Court held that the defendant furniture store had probable cause to file a replevin action because it was not unreasonable for the defendant to believe that the plaintiff had fallen behind at least two payments. *Id.* at 665–66. The debtor in *Carnegie* had fallen behind one payment in a television set rental agreement, and shortly thereafter, she renegotiated her contract creating a purchase contract with a payment plan, yet she accepted a receipt labeled "rental" for a tendered payment. *Id.* at 661–62. After this renegotiation, she attempted to make another payment on the television; however, a dispute ensued as to whether that payment was for a rental or purchase payment and the payment was not made. *Id.* at 662. Ultimately, she continued to make the rest of her payments but not before the replevin action commenced, which she ultimately won. *Id.* The court found that it was inappropriate in the malicious prosecution action to submit to the jury the issue of

probable cause, because it was clear from the replevin action that her conduct of accepting a receipt marked "rental" could indicate that it was a payment on the rental contract and not the purchase contract.  *Id.* at 665–66.

While this case and *Carnegie* both deal with a debtor that had fallen behind on their payments, *Carnegie* is not persuasive at this time. There was no dispute in *Carnegie* that the debtor had fallen behind in payments and that she had never made a payment substantial enough to come current on either the rental or purchase contract.  *Carnegie* is distinguishable from the present matter where Weldemariam tendered a cashier's check for the full amount due plus funds for one future mortgage payment.  (Am. Pet., Exh. A ¶ 4.)  There were also two contracts involved in *Carnegie* that created a reasonable degree of confusion as to which contract payment should be applied. Here, the Bank provided a letter acknowledging receipt of the payment and that the amount brought Weldemariam's account back into compliance.  (*Id.* at ¶  5.)  Weeks later, the Bank inexplicably reversed the credit on Weldemariam's account placing his account in default.  (*Id.* at ¶ 6.)  Moreover, it is important to note that *Carnegie* was not based on the facts alleged in a complaint but rather after all evidence was presented at trial.  At this stage, the court is to view all facts in a light most favorable to Weldemariam.

As to the Bank's contention that its records show that Weldemariam was in default and the prior history of default gave rise to probable cause, it is not persuasive at this stage in the proceedings.  In the original foreclosure action, the court remarked, "that no explanation was given for why [the plaintiff] was not in compliance. . . ."  (Am. Pet., Exh. A. ¶ 9.)  Moreover, the court held that Weldemariam was not in breach of the agreement at the time the action was commenced. The court finds that Weldemariam has sufficiently alleged that the Bank did not have probable cause to initiate a foreclosure action.

2.    <u>Malice</u>. The court further finds that Weldemariam's amended petition sets forth sufficient facts to plausibly allege the existence of malice.

The Bank argues that Weldemariam failed to meet his pleading standard in two ways. First, that he did not plead any facts that fit examples of malice listed in *Nelson*. (Doc. 9 at 13.) Second, that the allegation of malice is nothing more than a "bald legal conclusion" unsupported by any facts in the amended petition. (*Id.*) Both arguments fail based on the record and the law.

In *Nelson*, the Kansas Supreme Court stated that malice is not restricted to personal hatred, spite, or revenge, but is enough if it is "instituted for any improper or wrongful motive." 607 P.2d at 444. The court then addressed several illustrations from the Restatement (Second) of Torts § 676. The Bank argues that Weldemariam has not sufficiently alleged facts showing malice because the allegations do not fall into one of the examples in *Nelson*. (Doc. 9 at 13-14.) But, there is no indication in *Nelson* that the list is exhaustive. Rather, the list includes examples of malice and the court held that any intentional purpose, other than a proper adjudication of the claim, is malicious for the purpose of malicious prosecution. *Nelson*, 607 P.2d at 444. In any event, the first example given in the list is when "the person bringing the civil proceedings is aware that his claim is not meritorious." *Id*. This is congruent with a later statement in *Nelson* which states, "[t]he jury may infer malice (wrongful purpose) from the absence of probable cause but they are not bound to so infer it." *Id.* at 445.

In this case, the court has determined that Weldemariam sufficiently alleged a lack of probable cause. At this stage, the court is to view the allegations in a light most favorable to Weldemariam. Based on a lack of probable cause, a jury could reasonably infer malice in this case. *Id.*; *see also Marso v. Safespeed*, LLC, No. CV 19-2671-KHV, 2020 WL 4464410, at *14

8

(D. Kan. Aug. 4, 2020) ("Because plaintiff has sufficiently alleged that SafeSpeed acted without probable cause, an inference of malice arises that is sufficient to satisfy this element.")

      3.    <u>Damages</u>.  The Bank argues that Weldemariam has failed to allege damages that are recoverable under Kansas law because he is only seeking costs of litigation.  (Doc. 9 at 10-11.)

      For the damages recoverable for malicious prosecution, Kansas has adopted the Restatement (Second) of Torts § 681. *See Nelson*, 607 P.2d at 447. The damages recoverable are:

1)    the harm normally resulting from any arrest. . . and

2)    the harm to his reputation by any defamatory matter alleged as the basis of the proceedings, and

3)    the expense that he has reasonably incurred in defending himself against the proceedings, and

4)    any specific pecuniary loss that has resulted from the proceedings, and

5)    any emotional distress that is caused by the proceedings.

*Id.* Furthermore, Kansas allows for the award of punitive damages in malicious prosecution actions when actual damages are proved.  *Id.*; *see also Sampson v. Hunt*, 233 Kan. 572, 587–88, 665 P.2d 743 (1983) (The court held that punitive damages thirty times greater than the award of actual damages were reasonable under the circumstances to deter future malicious conduct.)

      Weldemariam's amended petition specifically requests $25,000 in relief for the cost of defending himself in the foreclosure proceedings.  (Am. Pet. at 4.)  He also seeks damages for mental and emotional distress.  These damages are available under Kansas law.  Therefore, Weldemariam has sufficiently alleged that he suffered recoverable damages as a result of the Bank's actions.

## IV.    Conclusion

Accordingly, the Bank's motion to dismiss is DENIED.  (Doc. 8.)  Weldemariam is instructed to file an amended complaint to reflect the voluntary dismissal of his claims of negligence, intentional infliction of emotional distress, and libel within ten days of this order. Failure to do so will result in the dismissal of those claims.

**IT IS SO ORDERED** this 25th day, November 2020.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE